IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

MARVIN RYDALE WILLIAMS                                             PLAINTIFF

            v.                       Civil No. 1:14-cv-01001

SHERIFF DAVID NORWOOD,
Ouachita County, Arkansas; JAIL
ADMINISTRATOR NATHAN GREELEY;
JAILER DOUG WOOD; JAILER WESLEY
STRINGFELLOW; JAILER MELINDA
HUNTER; JAILER ANTHONY LUCUS;
JAILER JUSTIN CREECH; JAILER EARL
PORCHIA; JAILER TOSFLIN; and
JAILER JUSTIN PURDUE                                              DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil rights action filed by the Plaintiff pursuant to 42 U.S.C. § 1983.  He proceeds

*pro se* and *in forma pauperis.*  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2014),

the Susan O. Hickey, United States District Judge, referred this case to the undersigned for the

purpose of making a report and recommendation.

Plaintiff contends his constitutional rights were violated while he was incarcerated in the

Ouachita County Detention Center (OCDC).  The case is before me on the Motion for Summary

Judgment (ECF No. 24) filed by the Defendants.[1]  A hearing was held on January 27, 2015, to allow

the Plaintiff to respond orally to the Motion.  The Motion is now ready for decision.

---

[1]The jailers listed as Anthony Lucus and Justin Purdue were never served.  Service was attempted under these names but was returned unexecuted as no persons by these names worked at the facility. ECF No. 12.

## I.  Background

Plaintiff testified that he was arrested in Illinois on an absconding charge and extradited to Arkansas.  *See also* ECF No. 25-1 at 19.[2]  He was booked into the OCDC on July 13, 2013.  *Id.* at 20.  He testified he remained incarcerated there until mid-January of 2014.  *See also* ECF No. 25-1 at 10.

While at the OCDC, Plaintiff maintains his constitutional rights were violated in the following ways: his diet was inadequate; he had no access to a law library; the security at the jail was inadequate; his mail was tampered with; he was denied medical care; the grievance procedure was inadequate; and his conditions of confinement were unconstitutional.

## II.  Applicable Standard

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party."  RSBI Aerospace, Inc. v. Affiliated FM Ins. Co., 49 F.3d 399, 401 (8th Cir. 1995).  The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

---

[2]For ease in locating the documents cited to, the Court will utilize the CM/ECF document and page number rather than to the exhibit number or letter assigned by the parties.

The Court must view all evidence and inferences in a light most favorable to the nonmoving party. See McCleary v. ReliaStar Life Ins. Co., 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

### III.  Discussion

Section 1983 imposes civil liability upon one:

> who under color of any statute, ordinance, regulation, custom or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.

42 U.S.C. § 1983.

Governmental actors may be sued in both their individual and official capacities. Gorman v. Bartch, 152 F.3d 907 (8th Cir. 1998) With respect to the official capacity claims, "[i]t is well established that a municipality cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." Atkinson v. City of Mountain View, Mo., 709 F.3d 1201, 1214 (8th Cir. 2013).  To establish Ouachita County's liability under § 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." Moyle v. Anderson, 571 F.3d 814, 817 (8th Cir. 2009)(citation omitted).

### (A).  Inadequate Medical Care

Plaintiff testified that he began seeking medical care for a knot on his leg on November 3, 2013. Initially, Plaintiff believed the knot was caused by a spider bite.  With the exception of Sheriff Norwood and Jail Administrator Greeley, Plaintiff testified he spoke with each Defendant regarding

his need for treatment and also showed them the knot.  Plaintiff testified he submitted several sick leave requests.  Plaintiff has submitted the declarations of three former inmates who were aware of the fact that he was seeking medical attention beginning on November 3, 2013.  ECF No. 33 at 1-3.

During November of 2013, the OCDC did not have any medical staff and instead took inmates to an outside facility for medical care.  Each time he requested medical care, Plaintiff states he was given an excuse as to why he could not be taken at that time.  Plaintiff testified that there was an insufficient amount of staff available to take inmates for medical treatment unless it was an emergency.

On November 5, 2013, Plaintiff noticed he had developed another knot on his leg and one under his right arm-pit.  ECF No. 25-1 at 21.  Plaintiff did not receive medical care until November 15, 2013, at which time he was taken to the Ouachita County Medical Center.  ECF No. 25-6 at 21. Plaintiff testified the knot under his right arm had to be lanced and Plaintiff had to go to wound care for approximately three weeks.

Plaintiff also objects to the jailers passing out medication.  On two occasions he said he did not receive his medication.  Plaintiff testified that it was his belief that medication should be dispensed by medical personnel.

The Eighth Circuit analyzes both a pretrial detainee's and a convicted inmate's claim of inadequate medical care under the deliberate indifference standard.  See Butler v. Fletcher, 465 F.3d 340, 344 (8th Cir. 2006).  To prevail on an Eighth Amendment claim, the Plaintiff must prove that defendants acted with deliberate indifference to his serious medical needs.  Estelle v. Gamble, 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component:  'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively

-4-

serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" Jolly v. Knudsen, 205 F.3d 1094, 1096 (8th Cir. 2000)(quoting Dulany v. Carnahan, 132 F.3d 1234, 1239 (8th Cir.1997)).

"For a claim of deliberate indifference, the prisoner must show more than negligence, more even that gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation.  Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." Popoalii v. Correctional Medical Services, 512 F.3d 488, 499 (8th Cir. 2008)(internal quotation marks and citations omitted).

The "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." Jenkins v. County of Hennepin, Minn., 557 F.3d 628, 633 (8th Cir. 2009). The objective seriousness of delay in treatment must be measured by reference to the effect of delay, which must be shown by verifying medical evidence in the record.  Laughlin v. Schriro, 430 F.3d 927, 929 (8th Cir. 2005).

The delay in this case was unfortunate but I do not believe there is any genuine issue of material fact as to whether the delay was the result of deliberate indifference on the part of the Defendants.  Instead, the delay was caused, by in large, by competing demands on the jailers' time. Additionally, Plaintiff has not presented any verifiable medical evidence showing that the detrimental effect of the delay.  Without such evidence, the claim fails.

Plaintiff's claim that medically trained personnel should pass out the medication does not state a claim of constitutional dimension.  See e.g., Booker v. Herman, 2006 WL 2457230, *5 (N.D. Ind.  Aug. 22, 2006)("While it might be a good practice, tradition, or even state law to require that only medical staff can deliver medication, the Constitution does not prohibit guards from distributing

medication to inmates.  This allegation states no claim upon which relief can be granted").  Nor does his claim that he missed two doses of medication state a constitutional claim.  <u>Herndon v. Whitworth</u>, 924 F. Supp. 1171 (N.D. Ga. 1995)(occasional missed doses of medication do not implicate the Constitution).

Defendants are entitled to summary judgment on this claim.

**(B).  No Access to a Law Library**

Plaintiff testified that during his incarceration he asked to go to the law library and/or to have access to legal materials in connection with a child support case.  He had a public defender but wanted to do some research.  He spoke with Jailers Priest, Stringfellow, and Tosflin about his need for access to legal materials.

"Inmates undeniably enjoy a constitutional right of access to the courts and the legal system." <u>Myers v. Hundley</u>, 101 F.3d 542, 544 (8th Cir. 1996)(<u>citing, Lewis v. Casey</u>, 518 U.S. 343 (1996); <u>Bounds v. Smith</u>, 430 U.S. 817, 821 (1977)).   In <u>Myers</u>, the Eighth Circuit stated that:

> [t]o protect that right, prisons must provide inmates with some access to legal materials or to legal assistance so that inmates can prepare and pursue complaints, and with some ability to mail these complaints and related legal correspondence once prepared. Inmates do not have a right, however, either to law libraries or to unlimited stamp allowances for legal mail.   Instead, the duty to make such arrangements is bounded by the inmates' right of meaningful access to the courts.  To state a claim that a law library or legal assistance program violates this right, inmates must assert that they suffered an actual injury to pending or contemplated legal claims.  Alleging theoretical inadequacies is insufficient. Inmates must instead show, for example, that a complaint that they prepared was dismissed due to a technical requirement that a library's inadequacies prevented them from knowing, or that a library was so inadequate that it prevented them from filing a complaint for actionable harm at all.

<u>Myers,</u> 101 F.3d at 544 (citations omitted).

In <u>Cody v. Weber</u>, 256 F. 3d 764 (8th Cir. 2001), the Eighth Circuit noted that the Supreme Court in <u>Lewis v. Casey</u>, 518 U.S. 343 (1996) and <u>Bounds v. Smith</u>, 430 U.S. 817 (1977),

"determined that the right of access to the courts guarantees an inmate the ability to file lawsuits that directly or collaterally attack the inmate's sentence or that challenge the conditions of the inmate's confinement, but it does not extend to the right to 'discover grievances' or to 'litigate effectively once in court.'"  Cody, 256 F. 3d at 767-68 (quoting Lewis, 518 U.S. at 354-55).

Plaintiff does not indicate he missed any deadlines with a court or was harmed in anyway by the lack of access to legal materials in connection with the child support case.  Moreover, he was represented by counsel.  I also note that during his incarceration at the OCDC, Plaintiff was able to file this civil rights case.  See e.g. Klinger v. Department of Corrections, 107 F.3d 609, 617 (8th Cir. 1997) (to prevail on access-to-courts claim, inmate must show actual injury or prejudice even if denial of access to library is complete and systematic).   As Plaintiff suffered no injury, this claim fails as a matter of law.

The Defendants are entitled to summary judgment on this claim.

### (C).  Inadequate Diet

With respect to his diet, Plaintiff testified that the portions were very small and that he lost twenty to twenty-five pounds during the months he was at the OCDC.  Plaintiff testified his weight was approximately 190 when he went into the facility and approximately 165 when he was released.  However, Plaintiff's booking sheet indicates his weight on intake to be 160 pounds.  ECF No. 25-6 at 1.

Plaintiff described breakfast as consisting of no meat, no milk except on occasion, and no juice.  He described supper as consisting of a sandwich, maybe a few chips, or a moon-pie or a few cookies.  The food was not covered and was served by individuals not wearing gloves.  He indicated that the meals were cold and usually served by Jailer Creech, Jailer Porchia, or Jailer Stringfellow.  Plaintiff offered no testimony as to what his caloric intake per day was.

Plaintiff did not get sick from the food he was served.  However, he testified that because of the small amount of food he was getting he did not have any energy and as noted above maintains he lost a significant amount of weight.

Defendant Greeley, by affidavit, indicates that inmates are given a daily caloric intake of greater than 2300 calories a day.  ECF No. 25-2 at1-2.  He also asserts the menu is approved by a dietician.  *Id.*  According to Greeley, meals are prepared based on the approved menu to ensure that detainees receive the proper amount of calories.  *Id.*

The Eighth Amendment's prohibition against cruel and unusual punishment is violated if an inmate is not provided with meals adequate to maintain his health.  See e.g., Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir. 1996); Wishon v. Gammon, 978 F.2d 446, 449 (8th Cir. 1992)(prisoners have a right to nutritionally adequate food); Campbell v. Cauthron, 623 F.2d 503, 508 (8th Cir. 1980)(prisoners are guaranteed a reasonably adequate diet).  Merely because the food served is not prepared to an inmate's taste does not implicate the Eighth Amendment.  Burgin v. Nix, 899 F.2d 733, 734-35 (8th Cir. 1990).  Rather, the Eighth Amendment is only violated if the food provided is inadequate to maintain good health.  *Id.*; see also Wilson v. Seiter, 501 U.S. 294, 298 (1991)(the deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the minimal civilized measure of life's necessities).

I do not believe any genuine issues of material fact exist.  While unsanitary, the serving of food without the use of gloves does not amount to a constitutional violation.  Similarly, while the food Plaintiff was served sounds unappetizing and consists of less food than the Plaintiff would like to have, Plaintiff did not become ill or suffer any other health consequences as a result.  Plaintiff's claim that he lost a significant amount of weight is belied by the booking sheet.

Defendants are entitled to summary judgment on this claim.

-8-

### (D).  Inadequate Security

Plaintiff testified that Sheriff Norwood and Jail Administrator Greeley only came to the jail if someone had to go to court.  Plaintiff testified the jailers only came into the cell block at meal time and medication time.  Plaintiff indicates there were several fights, including one he was involved in, that the jailers did not respond to.

To prevail on his failure to protect claim, Plaintiff must satisfy a two prong test: (1) show he was "incarcerated under conditions posing a substantial risk of serious harm;" and (2) the prison officials were "deliberately indifferent [to his] health or safety."   See Holden v. Hirner, 663 F.3d 336, 341 (8th Cir. 2011) (internal citations omitted).  The first prong is an objective requirement to ensure the deprivation is a violation of a constitutional right.  *Id.*  The second, however, is subjective requiring Plaintiff show the official "both knew of and disregarded 'an excessive risk to inmate health or safety.'"  *Id*. (quoting Farmers, 511 U.S. at 837).  "An official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it."  Young v. Selk, 508 F.3d 868, 873 (8th Cir. 2007).  Negligence alone is insufficient to meet the second prong, instead, the official must "recklessly disregard a known, excessive risk of serious harm to the inmate."  Davis v. Oregon County, 607 F.3d 543, 549 (8th Cir. 2010) (internal quotation marks and citation omitted).  Furthermore, "[c]laims under the Eighth Amendment require a compensable injury to be greater than *de minimis*."  Irving v. Dormire, 519 F.3d 441, 448 (8th Cir. 2008).

There is no genuine issue of material fact as to whether the named Defendants failed to protect the Plaintiff.  His allegations are simply insufficient to rise to the level of deliberate indifference.  Furthermore, with respect to the fight he was in, Plaintiff testified that he only got hit in the jaw and the injury was not serious enough to require medical care.

Defendants are entitled to summary judgment on this claim.

-9-

### (E).  Tampering with Mail

Plaintiff testified that in November of 2013 he sent a letter to the court requesting a § 1983 form.  It is his belief that someone took the letter.  He has no idea who took the letter.  He testified he never received the § 1983 form and the letter does not show on his mail log.  ECF No. at 7-10.  When he sent in another request for a § 1983 form, he did receive the form.

Inmates have a First Amendment right of free speech to send and receive mail.  Hudson v. Palmer, 468 U.S. 517, 547 (1984).  "The fact of confinement and the needs of the penal institution impose limitations on constitutional rights, including those derived from the First Amendment."  Jones v. North Carolina Prisoners' Union, 433 U.S. 119, 125 (1977).  "Prisoners' First Amendment rights encompass the right to be free from certain interference with mail correspondence."  Davis v. Norris, 249 F.3d 800, 801 (8th Cir. 2001).

Restrictions on this First Amendment right are valid "only if [they are] (1) reasonably related to legitimate penological interests," such as security, order, or rehabilitation and are (2) no greater than necessary to the protection of the governmental interest involved.  Turner v. Safely, 482 U.S. 78, 89 (1987).  In balancing the competing interests, courts afford greater protection to legal mail than non-legal mail and greater protection to outgoing mail than to incoming mail.  See Thornburgh v. Abbott, 490 U.S. 401, 413 (1989).

Here, Plaintiff's claim is based on a single incident of alleged mail tampering.  He does not attribute this tampering to any of the named Defendants.  Further, his mail log shows Plaintiff both sending and receiving mail.  ECF No. 33 at 7-10.  There was no evidence introduced suggesting there was any ongoing practice of censorship.  Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003)(Plaintiff must show regular and unjustifiable interference--an isolated incident of mail tampering is usually insufficient to establish a constitutional violation).

The Defendants are entitled to summary judgment on this claim.

**(F).  Inadequate Grievance Procedure**

With respect to the grievance procedure, Plaintiff testified that it was controlled by Sheriff Norwood and Jail Administrator Greeley.  Inmates fill out a paper grievance, give the grievance to the jailer, and it is given to Jail Administrator Greeley to handle.  Plaintiff testified that you received no receipt for the grievance and often did not receive a response to the grievance.

"Inmates do not have a constitutionally protected right to a grievance procedure.  Because a . . . grievance procedure does not confer any substantive right upon prison inmates, a prison official's failure to comply with the . . . grievance procedure is not actionable under § 1983." Ashann-Ra v. Commonwealth of Virginia, 112 F. Supp. 2d 559, 569 (W.D. Va. 2000)(citations omitted); see also Lombolt v. Holder, 287 F.3d 683, 684 (8th Cir. 2002)(denial of grievances does not state a substantive constitutional claim); Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993)("no constitutional right was violated by the defendants' failure, if any, to process all of the grievances [Plaintiff] submitted for consideration"); Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994)(inmates have no constitutional right to grievance procedure); Blagman v. White, 112 F. Supp. 2d 534 (E.D. Va. 2000)(inmate has no constitutional entitlement to grievance procedure), aff'd, 3 Fed. Appx. 23 (4th Cir. 2001).

"Rather, prison inmates have a constitutional right to petition the government for redress through a right of access to the courts." Blagman, 112 F. Supp. 2d at 542 (citing Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991)).  A jail's "refusal to entertain such grievances does not compromise the inmate's constitutional rights, as access to the courts would still be available." Id. (citation omitted).  "[A]ny alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless." Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005).

-11-

Plaintiff has not identified a federal constitutional right that he was deprived of because of the alleged inadequacies in the grievance procedures.  He makes no argument that he was treated differently from other similarly situated prisoners, or his grievances were ignored because of his exercise of his constitutional rights, or his ability to exercise any specific constitutional right was chilled by Defendants' actions.

Defendants are entitled to judgment in their favor on this claim.

**(G).  Unconstitutional Conditions of Confinement**

With respect to the conditions, Plaintiff testified that: there was black mold in the shower; they were provided cleaning supplies infrequently--maybe once a week with other requests for supplies being denied; there were spiders; they had to fill the cooler they were provided for drinking water in the shower; the trash cans were not cleaned daily; no tuberculosis (TB) testing was done; no delousing was done; you only had a blanket to sleep with; and you had to lay on the bare mat which may not have been cleaned between uses.  Plaintiff also testified that he believes he developed the boils as a result of the "nasty conditions."  Finally, Plaintiff provided the Court with copies of three grievances he wrote about the temperature in the pod being cold.  ECF No. 33 at 4-6.

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." County of Sacramento v. Lewis, 523 U.S. 833, 851 (1998)(citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. See Farmer v. Brennan, 511 U.S. 825, 832 (1994).  "[I]nmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time." Howard v. Adkison, 887 F.2d 134, 137 (8th Cir. 1989).

The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime." Rhodes v. Chapman, 452 U.S. 337, 347 (1981); see also Butler v. Fletcher, 465 F.3d 340, 345 (8th Cir. 2006) (deliberate indifference standard of the Eighth Amendment applies to all claims that prison officials failed to provide adequate food, clothing, shelter, etc., whether brought by pretrial detainees or convicted inmates). Prison conditions claims include threats to an inmate's health and safety. Irving v. Dormire, 519 F.3d 441, 446 (8th Cir. 2008)(citation omitted).

"A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element." Revels v. Vincenz, 382 F.3d 870, 875 (8th Cir. 2004)(citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendants' conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner" *Id.* (citations and internal quotation marks omitted). Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." Revels, 382 F.3d at 875.

The conditions, as described by the Plaintiff, were indeed unclean or "nasty" as characterized by the Plaintiff. It is difficult to believe that the conditions could not be improved without the need for a significant outlay of funds. For example, inmates could easily be provided with cleaning supplies on a more frequent basis.

-13-

However, I believe more is required to state a claim of constitutional dimension.  Plaintiff had a mat to sleep on, he was able to shower, he was served three meals a day, and he had access to cleaning supplies approximately once a week.

The Defendants are entitled to summary judgment on this claim.

### IV.  Conclusion

For the reasons stated, I recommend that the Defendants' Summary Judgment Motion (ECF No. 24) be **GRANTED AND THIS CASE DISMISSED WITH PREJUDICE.**

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 2nd day of February 2016.

/s/ Barry A. Bryant_____
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE